# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DERRICK DIRTON             *

Plaintiff                  *

v                          *        Civil Action No. RDB-10-1200

SGT. J. HUGHES, et al.     *

Defendants                 *
                         ***

## MEMORANDUM OPINION

Pending are Motions to Dismiss or for Summary Judgment filed by Defendants. ECF No. 13 and 17. Plaintiff has not opposed the motions. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, the motions, construed as Motions for Summary Judgment, shall be granted.

## Background

Plaintiff, an inmate confined to North Branch Correctional Institution, alleges that on May 1, 2010, Officer Geoff and Nurse Metz were distributing pain medications and he was given the improper medication. Plaintiff claims he returned the improper medication to Metz and Geoff slammed the food slot on his right hand. When he complained, Geoff swore at Plaintiff and refused to let him speak with a supervisor. Plaintiff states he removed the sprinkler head in his cell so that a supervisor would respond and he could speak to him. The cell flooded when the sprinkler head was removed and although the water spilled out onto the tier, no supervisors responded. He claims Sergeant Hughes and Officers Keefer, Friend, Caple and Geoff violated opened Plaintiff's cell door without first handcuffing him, sprayed mace in his face and began punching him in his face and head. Plaintiff states he fell to the ground and the officers kicked his head and back and punched his face and body. He alleges the officers forced his arms behind

his back and smashed his face into the floor. Plaintiff states the officers dragged him to a holding cell designated for inmates on suicide watch, where he was thrown to the ground, kneed him in the back by Friend, uncuffed and left unattended. ECF No. 1.

Plaintiff alleges when Lieutenant Durst[1] arrived to the holding cell the handcuffs were reapplied. He alleges he was taken to the housing unit emergency room, where Nurses Autum, Anieka, Jane and April laughed at him and said he was fine. He claims that he told them he was in pain and bleeding, but they continued to laugh at him and did not provide him with medical attention. Plaintiff states he was returned to the isolation cell and, as the door to the cell was closing, Durst, Hughes, Keefer, Friend and Caple pulled his arms through the food slot. He claims Hughes said "Let my arm go!" three times and Durst sprayed him with mace through the food slot. His handcuffs were removed and he claims he was left alone for ten minutes before Officer Caple arrived with another officer to escort him to the housing unit emergency room. *Id.*

He alleges that when he arrived at the emergency room, Durst told him he would not receive a shower and the nurses were laughing at his plight. He claims he was not given a shower despite being maced, and was placed in the same isolation cell which was still covered in mace. Plaintiff states he had no mattress and the water was turned off so he could not clean himself. Plaintiff further alleges the window in the cell was bolted shut and a glass shield placed in front of the door, making it difficult to breathe. Plaintiff was placed on staff alert and allegedly denied his medical diet, property, recreation, and showers. He states he suffers from epilepsy as well as mental health problems and suffered two seizures during his confinement in the isolation cell. Although his seizure disorder requires wearing a seizure helmet at all times, he was denied

---

[1] Lieutenant Donna Durst shares the same last name as Nurse Autumn Durst who provided supporting affidavit on behalf of Medical Defendants. ECF No. 13 at Ex. A.

2

a helmet. Plaintiff seeks a transfer to Patuxent Institution, as well as injunctive relief and monetary damages.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Exhaustion of Administrative Remedies

The correctional Defendants assert that the Complaint should be dismissed because Plaintiff has failed to exhaust administrative remedies. ECF No. 17. The PLRA provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that

> remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D.Md.2003). Plaintiff admits in his Complaint that he did not resort to the administrative remedy process prior to filing the instant Complaint because he was fearful of reprisal. ECF No. 1. Plaintiff's fear of reprisal apparently does not extend to filing litigation in this Court. The fact that Plaintiff resorted first to federal litgation affords his assertion that he feared retaliation no legitimacy. Rather, it is evident that Plaintiff simply prefers to resort to litigation rather than attempt to resolve a dispute through the administrative remedy procedure. Plaintiff's failure to pursue administrative remedies entitles the correctional Defendants to judgment in their favor.

### Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.

*See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839- 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The medical Defendants assert that Plaintiff was evaluated on May 1, 2010, after his exposure to pepper spray. ECF No. 13 at Ex. A. Plaintiff was brought to the medical room and

6

he told Nurse Durst that he was okay and did not want to be seen by medical staff; as a result, he was escorted back to his cell. When Plaintiff returned to the medical room again after he had been exposed to pepper spray a second time, he was examined and found to have no complaints or injuries. He was advised to return if needed. Later the same evening, Plaintiff refused to take prescribed medications and refused to sign a release stating he refused the medication. Durst and Metz co-signed the form as witnesses to his refusal.

On May 3, 2010, Plaintiff filed a sick call request form stating he had been assaulted on May 1, 2010, but was denied medical treatment by Nurses Durst, Metz, Shipley and Hebb. He was evaluated on May 9 and showed no sign of injuries. Defendants state that Plaintiff's allegations that the nurses laughed at him when he was brought to medical are false. Metz and Hebb were in the housing unit passing out medications when Plaintiff came to medical and Shipley was in another area of the prison entirely. ECF No. 13 at Ex. A.

With respect to Plaintiff's seizure disorder and the helmet of which he claims he was deprived, medical Defendants state that Plaintiff shredded the foam helmet he was provided. He was given a new helmet made of hard plastic which was returned to medical on May 28, 2010, when a new foam helmet was substituted. Plaintiff's request for the return of the hard plastic helmet was denied because it a security risk. Defendants aver that Plaintiff was never denied a helmet, but frequently opts not to wear it. *Id.*

The undisputed record evidence indicates that Plaintiff was provided with constitutionally adequate medical care. The medical Defendants are entitled to summary judgment in their favor. A separate Order follows.

January 19, 2011
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

7